UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOHN STAGIKAS,
        Plaintiff

v.

SAXON MORTGAGE SERVICES, INC.,
        Defendant

## Summary

1.  Plaintiff John Stagikas, a consumer, entered into an agreement with his mortgage
    company Saxon Mortgage Services under which he promised to make three timely
    payments in return for a permanent modification of the terms of his loan in the form of a
    lower monthly payment. Stagikas made his three payments, but Saxon disregarded the
    modification agreement and initiated foreclosure anyway. Saxon then ignored Stagikas's
    demand letter under the Consumer Protection Act. Saxon also committed violations of
    the Fair Debt Collection Practices Act throughout this time. Because Saxon has refused to
    respond to Stagikas's demand letter, he has no choice but to bring this suit against it.

## Federal Jurisdiction

2.  Jurisdiction over Counts I and II, Plaintiff's state-law claims, is invoked pursuant to this
    Court's supplemental jurisdiction under 28 U.S.C. § 1367.

3.  Jurisdiction over Count III is invoked pursuant to the Fair Debt Collection Practices Act,
    15 U.S.C. § 1692k.

4.  Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

5.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), in that the defendant
    transacts business in this District and that a substantial portion of the acts giving rise to
    this action occurred in this District.

## Parties

6. John Stagikas ("Stagikas" or "Plaintiff") is a natural person residing at 336 Leadmine Rd., Sturbridge, Worcester County, MA 01566.

7. Saxon Loan Servicing, Inc. ("Saxon" or "Servicer") is a Texas corporation with principal offices located at 4708 Mercantile Dr. North, Fort Worth, TX 76137. Saxon regularly does business in Massachusetts.

## Background

8. Stagikas purchased his home in 2005. On February 22, 2006, he refinanced his mortgage with a loan in the mount of $334,500 from the now-defunct Taylor, Bean & Whitaker Mortgage Corp. secured by a mortgage in favor of Mortgage Electronic Registration Systems, Inc.

9. Saxon is the mortgage servicer for Stagikas's loan, handling the billing and collections for the investor that owns the loan, the Federal National Mortgage Corporation (the mortgage giant commonly known as "Freddie Mac").

10. In January of 2009, Stagikas began to fall behind on his mortgage due to job loss. He contacted his mortgage servicer and attempted to make payment arrangements.

11. As described below, Stagikas made all required trial payments under a federal loan-modification program, after which he was entitled to have his loan permanently modified. But Saxon refused to modify, canceled his modification without cause, and left him in foreclosure.

## Background on the HAMP Program

12. To avert the ongoing national foreclosure crisis, the United States government has established the federal Home Affordable Modification Program ("HAMP"). HAMP was established pursuant to the Emergency Economic Stabilization Act of 2008, and the American Recovery and Reinvestment Act of 2009.

13. Under HAMP, mortgage servicers must evaluate eligible homeowners for loan modifications that will bring the homeowners' monthly mortgage payment of principal, interest, taxes, and insurance to 31% of the borrower's monthly pre-tax income.

14. Modifications are accomplished by capitalizing past-due amounts, reducing the interest rate to as low as 2% for five years, extending the term of the mortgage to up to 40 years, and deferring up to 30% of the principal amount of the loan. *See*, *e.g.*, Freddie Mac Single-Family Seller/Servicer Guide, Chapter C65, Section 6.[1]

15. Eligible homeowners are those who have as their home their primary residence, owe no more than $729,750 on their first mortgage, are having trouble paying their mortgage, obtained their mortgage before January 1, 2009, and whose payment of principal, interest, taxes, and insurance is greater than 31% of their monthly pre-tax income.

16. Once a homeowner is approved for HAMP, he enters into a three-month trial period under which he makes monthly payments in the reduced amount.

17. Once the homeowner makes all three payments in a timely manner, the servicer is required to permanently modify the loan. *See*, *e.g.*, Freddie Mac Single-Family Seller/Servicer Guide, Chapter C65, Section 1.[2]

**Count I**
**Massachusetts Consumer Protection Act, M.G.L. c. 93A**
**Failure to Evaluate for Loan Modification Under HAMP**

18. The preceding paragraphs are incorporated by reference.

19. Stagikas is not entitled to bring an action under M.G.L. c. 93A, § 11.

20. Saxon is engaged in trade or commerce in the District of Massachusetts.

21. Saxon engaged in unfair or deceptive acts or practices with respect to Stagikas in violation of the Massachusetts Consumer Protection Act, by refusing to evaluate Stagikas for a loan modification under as described in more detail below.

22. On information and belief, Stagikas's mortgage is owned by Freddie Mac. Saxon is obligated to follow all HAMP servicing guidelines with respect to Stagikas's mortgage.

23. Saxon is obligated to follow HAMP guidelines because it has a mortgage-servicing contract with the owner of Stagikas's mortgage, Freddie Mac, under which it has promised to follow all Freddie Mac mortgage-servicing guidelines, including HAMP guidelines.

24. Stagikas is an eligible homeowner under HAMP guidelines.

---

[1] Available at http://www.allregs.com/tpl/public/fhlmc_freesite_tll_exlink.aspx?did2=aa7efc06-17b8-4e82-a017-dbde7d12844e, which is incorporated by reference into this Complaint.
[2] Available at http://www.allregs.com/tpl/public/fhlmc_freesite_tll_exlink.aspx?did2=aa7efc06-17b8-4e82-a017-dbde7d12844e, which is incorporated by reference into this Complaint.

25. In 2009, Stagikas had fallen behind on his mortgage and promptly contacted Saxon about applying for a loan modification

26. Saxon determined Stagikas to be eligible for a three-month trial modification agreement under HAMP. Under HAMP, Stagikas's monthly mortgage payment was reduced from $2,032.46 to $1,123.75.

27. Under his trial modification agreement with Saxon, Stagikas was to make three payments of $1,123.75 on October 1, November 1, and December 1 of 2009.

28. The TPP agreement was a contract that stated that if Stagikas made the three trial payments, his trial loan modification agreement would be converted to a permanent agreement. It stated:

> If I am in compliance with this Trial Period Plan (the "Plan") and my representations in Section 1 continue to be true in all material respects, then [Saxon] will provide me with a Home Affordable Modification Agreement . . . .

**(Exhibit A.)**

29. This TPP agreement was signed by a representative of Saxon. (**Exhibit A.**)

30. This TPP agreement was intended to induce Stagikas to make the three payments.

31. Stagikas timely made his three payments as required. His representations in Section 1 of the agreement continued to be true in all materials respects.

32. Despite Stagikas's complete compliance with all material terms of the agreement, Saxon failed to give the promised performance and permanently modify Stagikas's mortgage loan.

33. Saxon's failure to evaluate Stagikas for HAMP is an unfair or deceptive practice in violation of the Massachusetts Consumer Protection Act, M.G.L. c. 93A.

34. Stagikas mailed a written demand letter pursuant to Saxon on June 18, 2010, reasonably describing the unfair or deceptive acts or practices of Saxon, as well as the injury suffered, pursuant to the Massachusetts Consumer Protection Act, M.G.L. c. 93A, § 9, asking for compliance with HAMP, evaluation of the mortgage for a loan modification, and a reasonable offer of settlement, which was received on June 21, 2010. (**Exhibit B**, without its exhibits.)

35. Over 30 days have elapsed since Saxon received Stagikas's demand letter but Saxon has failed to respond to it.

36. As a direct result of Saxon's violation of the Consumer Protection Act, Stagikas suffered actual damages, including but not limited to losing the economic benefit of a loan modification and accruing unnecessary interest that would not have accrued had the loan been modified. Stagikas's credit has been damaged because he now shows a long delinquency, rather than a modification that should have occurred months ago. Stagikas has also incurred time and expense in dealing with Saxon's wrongful actions.

## Count II
## Breach of Contract

37. The preceding paragraphs are repeated and realleged.

38. Stagikas and Saxon entered into a written contract supported by valid consideration under which Stagikas promised to make three monthly trial loan-modification payments, in exchange for Saxon's promise to modify his mortgage permanently after receiving those payments. (**Exhibit A**.)

39. Stagikas kept his promises and made his three monthly loan-modification payments to Saxon in October, November, and December 2009.

40. Saxon broke its promises, breaching the contract, and failing to provide Stagikas with a permanent loan modification.

41. By breaching its contract with Stagikas, Saxon caused damage to him by depriving him of his contractual right to have his mortgage permanently modified under the HAMP program.

## Count III
## Fair Debt Collection Practices Act, 15 U.S.C. § 1692k

42. The preceding paragraphs are incorporated by reference.

43. Saxon regularly uses the mail and telephone to attempt to collect debts from consumers, which debts are owed or alleged to be owed to third parties, sending billing statements and collection notices to consumer mortgagors of residential property, and arranging for the foreclosures of those properties.

44. Saxon is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

45. Stagikas's loan is a "debt" under the FDCPA. The loan was in default at the time Saxon began servicing it.

46. Saxon violated the FDCPA. Its violations include, but are not limited to, the following.

47. Under the FDCPA 15 U.S.C. § 1692c, "a debt collector may not communicate with a consumer in connection with the collection of any debt . . . if the debt collector knows the consumer is represented by an attorney . . . ."

48. On May 12, 2010, Saxon received a cease-and-desist letter from Stagikas requesting that all communications be directed to his attorney. (**Exhibit C**.)

49. Despite Stagikas's clear and unequivocal request, Stagikas violated the FDCPA by contacting him directly in connection with the collection of the debt, including but not limited to correspondence to him dated May 24, 2010. (**Exhibit D**, stating in part "Saxon Mortgage Services, Inc. is a debt collector.")

50. Under the FDCPA, 15 U.S.C. § 1692f, a debt collector "[m]ay not use unfair or unconscionable means to collect or attempt to collect a debt."

51. Saxon violated the above section of the FDCPA by using unfair and unconscionable means to collect Stagikas's mortgage debt, as described in detail in Count I, which is incorporated by reference in to this Count.

52. Under the FDCPA, 15 U.S.C. § 1692f(6), a debt collector may not "Tak[e] or threaten[] to take any nonjudicial action to effect dispossession" of property if "there is not present right to possession of the property . . . ."

53. Saxon violated the above section of the FDCPA by initiating and continuing foreclosure proceedings against Stagikas's real property despite having no right to do so under the trial modification agreement, which prohibited foreclosure.

54. As a result of Saxon's above FDCPA violations, Stagikas suffered damages for which Saxon is responsible. Stagikas's damages include, but are not limited to loss of time and attorney's fees.

**Prayer for Relief**

WHEREFORE, Plaintiff prays that the Court grant the following relief:

A.  Judgment in favor of Stagikas and against Saxon on all counts;

B.  A declaratory judgment that Saxon violated M.G.L. c. 93A, actual damages, nominal damages, costs, attorney's fees, and an order the Saxon provide a loan modification agreement as promised;

C.  A declaratory judgment that Saxon breached its contract with Stagikas, actual damages, costs, attorney's fees, and an order that Saxon immediately provide Stagikas with a permanent loan modification agreement as promised;

D.  A declaratory judgment that Saxon violated the FDCPA, actual damages, statutory damages, costs, attorney's fees, and an order that Saxon immediately provide Stagikas with a permanent loan modification agreement under the agreed terms;

E.  All other relief at law or in equity that Plaintiff is entitled to by law that this Court deems just and proper.

**Jury Demand**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Plaintiff, John Stagikas,
By his attorney,

/s/*Josef Culik*
Josef Culik (BBO #672665)
Culik Law P.C.
100 Cummings Center
Suite 425G
Beverly, MA 01915
Tel: 978-910-0248
Fax: 978-910-0247
josef@culiklaw.com

Dated: August 24, 2010