# United States District Court
# District of Massachusetts

|  |  |  |
|---|---|---|
| JOHN STAGIKAS, ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | | **CIVIL ACTION** |
| ) | | **No. 10-40164-TSH** |
| SAXON MORTGAGE SERVICES, INC., ) | | |
| Defendant. ) | | |
| ) | | |

**MEMORANDUM OF DECISION ON**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Docket No. 41)**
**September 24, 2013**

**HILLMAN, D.J.**

### Background

Saxon Mortgage Services, Inc. ("Defendant"), acting as servicer for the Federal Home Loan Mortgage Corporation ("Freddie Mac"), participates in the Home Affordable Modification Program ("HAMP"), a federal program designed to promote home mortgage modifications to reduce foreclosures. As part of the program, Defendant signed a Trial Period Plan agreement ("TPP") with John Stagikas ("Plaintiff"). Plaintiff seeks relief for Defendant's alleged breach of contract (Count II), violations a M.G.L. c. 93A (Count I) and violations of the Fair Debt Collection Practices Act ("FDCPA") (Count III). Plaintiff's claims survived Defendant's motion to dismiss (Docket No. 7), and Defendant now moves for summary judgment (Docket No. 41). For the reasons set forth below, I deny that motion.

**Facts**

On February 22, 2006 Plaintiff refinanced the property at 336 Leadmine Rd. Sturbridge, MA 01566, his primary residence, for $334,500, which was secured by a mortgage in favor of Mortgage Electronic Registration Systems. In 2009 Plaintiff fell behind on his mortgage payments. On September 23, 2009, Plaintiff applied for a HAMP loan modification. To apply for a HAMP loan modification, a borrower sends in an application containing his financial information such as income and expenses. The loan servicer then evaluates that information to determine whether the borrower is eligible for a TPP. The TPP is a uniform agreement executed by servicers and eligible buyers.

After submitting his application, Plaintiff received a TPP from Defendant. Plaintiff read the agreement and signed it on September 25, 2009. A representative of Defendant signed the TPP on October 5, 2009. The TPP required Plaintiff to make three reduced monthly payments, the first on October 1 and the last on December 1, and stated that if Plaintiff did this, and all other terms of the TPP were complied with, the lender would provide Plaintiff with a loan modification.[1] The Plaintiff complied with all of the TPP requirements, including making the three trial payments. Plaintiff says a representative of Defendant assured him he was qualified for the loan modification during a phone call. Plaintiff did not receive a permanent modification agreement after the three month trial period, but continued to make payments in January and February. Plaintiff says that when he tried to make his payment in March a representative of Defendant refused to accept it and notified the Plaintiff that Defendant would not provide him

---

[1] The first sentence of the TPP says "If I am in compliance with this [TPP] and my representations…continue to be true in all material respects, then the Lender will provide me with a Home Affordable Modification Agreement." It states in section 3, in part, "If I comply with the requirements in Section 2 and my representations in Section 1 continue to be true in all material respects, the Lender will send me a Modification Agreement for my signature which will modify my Loan Documents as necessary to reflect this new payment amount and waive any unpaid late charges accrued to date." The representations in section 1 include the financial information sent with the initial application. Section 2 requires the borrower to make the trial payments. Defendant's Concise Statement of Facts Ex. 3 to Ex. C.

with a permanent loan modification.

On April 8, 2010 Defendant sent Plaintiff a letter informing him that he did not qualify for a loan modification based on the results of a Net Present Value ("NPV") test. The NPV test calculates the cash flow that investors would receive were the loan modified and compare it to the cash flow investors would receive were the loan not modified. The letter also informed Plaintiff that, if he requested them within 30 days, the Defendant would provide Plaintiff with the NPV values used in the test. On April 10, the Defendant sent Plaintiff a letter informing him he did not qualify for a loan modification because he did not provide the requested documents. Defendant never sent Plaintiff an executed Modification Agreement.

Shortly after these correspondences, Plaintiff retained Attorney Josef Culik to represent him. On May 11, 2010 Attorney Culik sent an Authorization and Cease-and-Desist Letter to Defendant. This letter informed Defendant that Plaintiff was represented and demanded Defendant cease telephone contact with Plaintiff. Defendant did not contact Plaintiff by telephone after receiving this letter, but did send a number of letters directly to Plaintiff, including several demanding payment. On May 17 Attorney Culik sent Defendant a letter requesting the NPV values. Plaintiff never received these values. On June 18, 2010 Attorney Culik sent Defendant a demand letter pursuant to c. 93A requesting these values, among other things. Defendant did not respond to this letter. Defendant never provided Plaintiff with a loan modification and has threatened him with foreclosure.

## Discussion

1. Standard of Review

Summary judgment is appropriate when "there is no genuine issue as to any material fact" and thus "the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

An issue is "genuine" when the evidence is such that a reasonable fact-finder could resolve the point in favor of the non-moving party, and a fact is "material" when it might affect the outcome of the suit under the applicable law. *Morris v. Gov't Dev. Bank*, 27 F.3d 746, 748 (1st Cir.1994). When evaluating a motion for summary judgment, a court must construe the facts in the light most favorable to the non-moving party. *Benoit v. Tech. Mfg. Corp.*, 331 F.3d 166, 173 (1st Cir. 2003). On summary judgment, "[t]he test is whether, as to each essential element, there is 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Sensing v. Outback Steakhouse of Florida, LLC,* 575 F.3d 145, 152 (1st Cir.2009) (internal citations omitted).

    2. <u>Breach of Contract (Count II)</u>

Plaintiff claims Defendant breached its contract, the TPP, by failing to provide a permanent loan modification. To prove a claim for breach of contract, a plaintiff must show "that there was a valid contract, that the defendant breached its duties under the contractual agreement, and that the breach caused the plaintiff damage." *Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 316 (D. Mass. 1997). Defendant claims that no binding contracted existed because there was no offer. Defendant also contends that it was not required to provide Plaintiff with a permanent loan modification because a prerequisite stated in the TPP was not met.

The essential elements of a valid contract are an offer, an acceptance, and consideration. *Vadnais v. NSK Steering Sys. Am., Inc*., 675 F.Supp.2d 205, 207 (D. Mass.2009). Courts have consistently found that TPPs have all the required elements of binding contracts. *See Belyea v. Litton Loan Servicing, LLP*, 2011 WL 2884964, *7-8 (D. Mass 2011) (finding all elements of a contract could be established with the TPP); *In re Bank of America Home Affordable Modification Program (HAMP) Contract Litigation*, 2011 WL 2637222, *3-4 (D. Mass 2011)

(finding borrowers requirements under the TPP constitute consideration); *Bosque v. Wells Fargo Bank, N.A.*, 762 F.Supp.2d 342, 351-52 (D. Mass. 2011) (finding the TPP has all the elements of a valid contract, noting " it is plain that the TPPs were offers, and that [P]laintiffs' signatures and subsequent monthly payments under the terms of the TPP constituted acceptance of those offers.").  Moreover, it is clear from the TPP itself that sending a copy of the proposed TPP constituted an offer; the very word offer is used to describe the proffered agreement.[2]  The TPP offered a permanent loan modification in exchange for the borrower providing financial information, making three modified payments, and obtain credit counseling if the lender required. Plaintiff accepted the offer by signing and returning it and complying with his requirements. The summary judgment record (the "record") shows an offer, an acceptance, and consideration existed in this case.

     Defendant argues that if a contract did exist, Defendant did not have any obligations under it because not all conditions precedent to its performance were met. Plaintiff shows he performed all of his obligations. However, Defendant suggests that because Plaintiff did not receive a fully executed copy of a Modification Agreement, and the language in section 2(G) says, in relevant part "I understand this Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until…(ii) I received a fully executed copy of a Modification Agreement," that Defendant never became obligated to modify the loan. However, this language must be read in the context of the rest of the agreement, which states in its first sentence "If I am in compliance with this [TPP] and my representations…continue to be true in all material respects, then the Lender *will* provide me with a Home Affordable Modification Agreement."  (emphasis added).  Section 3 similarly states "If I comply with the

---

[2] "…to determine whether I qualify for the offer described in this Plan ("the Offer")….the Lender will send me a signed copy of this plan if I qualify for the Offer."

requirements in Section 2 and my representations in Section 1 continue to be true in all material respects, the Lender *will* send me a Modification Agreement for my signature."[3] (emphasis added). As several courts have noted, the Defendant's "interpretation of Sections 2.F and 2.G [of the TPP] 'conflicts with the clear tenor of the remainder of the document' and 'would render the other apparent promises in the document illusory.'" *Cave v. Saxon Mortg. Services, Inc*., 2013 WL 1915660, *7 (E.D. Pa 2013) (quoting *Gaudin v. Saxon Mortg. Servs., Inc.,* 820 F.Supp.2d 1051, 1054 (N.D.Cal.2011)).

In *Young v. Wells Fargo*, the Defendants also relied on section 2(G) to argue they were under no obligation to offer the permanent modification after the borrower had complied with the terms of the TPP. 717 F.3d 224, 235 (1st Cir. 2013). The Court rejects this argument, stating that "[a]lthough this reading is not implausible as a matter of language, defendants invoke it to advance the unreasonable proposition that they can unilaterally render large swaths of the TPP nugatory. In particular, defendants' interpretation would permit them to exercise an unfettered right to withhold a permanent modification offer… thereby erasing the benefits to the plaintiff of her compliance with the TPP." *Id.* The Seventh Circuit came to a similar conclusion, holding that "once [Plaintiff] fulfilled the TPP's conditions… [Defendant] was certainly required to offer *some* sort of good-faith permanent modification." *Wigod v. Wells Fargo Bank, N.A*., 673 F.3d 547, 565 (7th Cir. 2012). The same reasoning applies here. Accepting Defendant's argument would mean even after Plaintiff fully complied with the TPP, he was not entitled to the benefit of the TPP because Defendant decided not to send a modification. Nothing in the TPP refers to further eligibility determinations or gives a lender the option not to send a permanent modification agreement after the borrower fully complies with the TPP. The word "will" means the opposite; that the TPP required Defendant to provide a permanent modification if Plaintiff

---

[3] Section 2 requires the borrower to make the required Trial Period payments and make true representations.

6

fulfilled his duties under the contract. There is sufficient evidence to suggest Defendant breached the TPP by failing to provide Plaintiff with a loan modification.

Based on the record, a jury could find the existence of a contract, the breach of an obligation under the contract, and injury from loss of the benefit of the bargain.  Accordingly, Defendants motion for summary judgment on Count II is denied.

### 3.  Violation of M.G.L. c. 93A (Count I)

Plaintiff claims Defendant violated M.G.L. c. 93A by not performing its obligations under the TPP and through its inconsistent and confusing communications with Plaintiff. M.G.L. c. 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce," but does not define "unfair" or "deceptive." M.G.L. c. 93A §2(a).  To succeed on a c. 93A claim, Plaintiff must show Defendant engaged in "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce," and that this conduct cause Plaintiff "some appreciable loss or injury." *Smith v. Jenkins*, 818 F.Supp.2d 336, 339-40 (D. Mass. 2011); *see* M.G.L. c. 93A §2(a).

The record provides facts sufficient to show a breach of contract. However, more than just breach of contract is needed for a c. 93A claim to succeed. Here, the record shows both a breach of contract and misleading representations made in conjunction with it. While Plaintiff may be unable to show a HAMP violation, this does not defeat the c. 93A claim. To prove a Chapter 93A claim, "it is neither necessary nor sufficient that a particular act or practice violate common or statutory law." *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.,* 552 F.3d 47, 66 (1st Cir.2009).

In several cases, while plaintiffs did not allege HAMP violations per se, courts found their allegations of misleading representations in conjunction with HAMP loan modifications

7

enough for a c. 93A claim. *Okoye v. Bank of New York Mellon*, 2011 WL 3269686, *9 (D. Mass. 2011) (listing cases where courts found valid c. 93A claims not through "violations of a HAMP directive *per se,*" but through misrepresentations regarding the TPP and permanent loan modifications). Courts have found that when "defendants misrepresented to plaintiffs the status of their HAMP application, their rights under HAMP, or their eligibility for a permanent loan modification" these acts were "sufficiently unfair or deceptive" to impose c. 93A liability. *Markle v. HSBC Morgt. Corp*, 844 F.Supp.2d 172, 186 (D. Mass. 2011); *see Bosque v. Wells Fargo Bank, N.A.,* 762 F.Supp.2d 342, 353–54 (D. Mass.2011) (allegations "that defendant made deceptive, false or misleading representations to plaintiffs regarding their eligibility for a permanent loan modification and their rights under HAMP…are plainly sufficient to state a claim under [c.] 93A for unfair or deceptive practices"); *In re Bank of Am. Home Affordable Modification Prog. (HAMP) Contract Litig.,* 2011 WL 2637222, at *5 (D. Mass. 2011) (finding allegations that Defendants made "deceptive, false or misleading representations regarding [Plaintiffs'] eligibility for a permanent loan modification under HAMP" were enough for a c. 93A claim); *Blackwood v. Wells Fargo Bank, N.A.*, 2011 WL 1561024, at *4 (D. Mass. 2011) ("[T]he alleged misrepresentations concerning Blackwood's rights under HAMP… "are plainly sufficient" to state a 93A violation.") (quoting *Bosque*, 762 F.Supp.2d. at 354).

     In this case, Plaintiff puts forth facts showing Defendant made several misrepresentations, omissions, or misleading statements regarding the loan modification. First, statements in the TPP made Plaintiff believe he would be receiving a loan modification if he complied with the TPP. Neither the TPP nor the Defendant mentioned any NPV test, which Defendant later said made Plaintiff ineligible for a loan modification. Plaintiff also had two conversations with Defendant's representatives, one suggesting he would certainly be getting a

permanent modification, the other telling him he would not be getting one and that payments would no longer be accepted. Plaintiff received two letters from Defendants giving conflicting reasons for Plaintiff's ineligibility for a permanent loan modification, after Plaintiff had complied with the TPP. One told Plaintiff he was ineligible because he did not provide all he required paperwork, while the other said Plaintiff was ineligible due to the results of his NPV. Defendant never responded to Plaintiff's request for the NPV values. This series of communications between Defendant and Plaintiff, in addition to the related breach of contract, is enough to raise a genuine issue of fact as to whether or not Defendant acted unfairly or deceptively in its transactions with Plaintiff.

Furthermore, as discussed fully below, the record supports a finding of violations of the FDCPA. "Violations of the FDCPA are per se violations of [c.] 93A." *Harrington v. CACV of Colorado, LLC*, 508 F.Supp.2d, 128, 137 (D. Mass. 2007); *see also Martin v. Sands*, 62 F.Supp.2d 196, 201 (D. Mass.1999). These FDCPA violations, then, lend another factual basis to Plaintiff's claim that Defendants violated c. 93A.

The record also contains sufficient evidence to show injury due to Defendants unfair or deceptive practices. Plaintiff has shown damages for the breach of contract; these damages are included in the c. 93A consideration because many of the misleading communications led Plaintiff to enter into the contract or were a part of Defendant's breach. Additionally, Plaintiff's affidavit reports he has suffered emotional distress in the form of stress and anxiety that has led to physical problems such as weight loss, a racing heart, restlessness, and muscle tension, and lost a job, all due to his Defendants breach, misrepresentations, and violations of the FDCPA. Such damages constitute an injury under c. 93A. *Hershenow v. Enterprise Rent-A-Car Company Of Boston, Inc.*, 445 Mass. 790, 796 (2006).

As the record shows a genuine factual issue regarding whether Defendant violated c. 93A, Defendant's motion for summary judgment on Count I is denied.

### 4. Violation of the FDCPA (Count III)

Plaintiff claims Defendant violated the FDCPA when Defendant sent a number of letters directly to Plaintiff after Defendant knew Plaintiff had retained an attorney. The FDCPA prohibits such direct communication in 15 U.S.C. § 1692c(a) which states:

> [A] debt collector may not communicate with a consumer in connection with the collection of any debt . . . if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer.

Defendant is a clearly a "debt collector" and Plaintiff is clearly a "consumer" as defined by the FDCPA.[4] A "communication" is "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. 1692a(2). Defendant argues it did not violate the FDCPA prohibition on communicating with represented borrowers because the letters are not communications "in connection with the collection of any debt." 15 U.S.C. § 1692c(a).

It is undisputed that Defendant knew Plaintiff had obtained representation. Plaintiff's attorney informed Defendant that Plaintiff was represented and did not wish to be contacted directly. After Defendant received this information, Defendant sent at least sixteen letters directly to Plaintiff. Two of these are mortgage loan statements, several discuss another potential loan modification, and another notifies Plaintiff that he is delinquent on his mortgage and requests information. Most, if not all of the sixteen letters contain the language "Saxon

---

[4] "The term 'consumer' means any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. 1692a(3). "The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. 1692a(6). Neither party contests that they fall into these respective categories.

Mortgage Services is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose." (Stagikas Aff. Exs. 6, 8).

"Courts evaluate the proscribed collection activities and communications to the debtor under a 'least sophisticated consumer' standard," an objective standard that "protects 'the gullible as well as the shrewd' but preserves 'a quotient of reasonableness' by preventing liability for 'bizarre or idiosyncratic interpretations of collection notices.'" *McDermott v. Marcus, Errico, Emmer & Brooks, P.C*., 911 f.Supp.2d 1, 54 (D. Mass. 2012) (quoting *Hartman v. Great Seneca Financial Corp*., 569 F.3d 606, 612 (6th Cir.2009)). For a communication to be actionable under 1692c(a) it need not be an actual collection attempt with an "explicit demand for payment," rather, it must be "connected" to one. *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011) (quoting *Gburek v. Litton Loan Serv. LP,* 614 F.3d 380, 385 (7th Cir. 2010)). This requirement is met when the purpose of the communication is to induce payment by the debtor, either by a direct demand for payment or through other means. *Grden*, 643 F.3d at 173. A reasonable jury could find that, especially under the "least sophisticated consumer" standard, some of the communications Plaintiff received after notifying Defendant of his representation were "connected with the collection of [a] debt." 15 U.S.C. § 1692c. Specifically, the balance statements he received that included late charges and the phrase "TOTAL AMOUNT DUE" along with the statement "Saxon Mortgage Services is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose" could certainly be considered a collection attempt, or at least connected to one. (Stagikas Aff. Ex. 6, 8). Plaintiff shows there is a question of fact on his claim of an FDCPA violation regarding 15 U.S.C. § 1692c.

Plaintiff also claims Defendant violated another provision of the FDCPA, 15 U.S.C. §

1692f, based on the same conduct as is the c. 93A claim. 15 U.S.C. § 1692f prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt." Plaintiff does not claim Defendant violated any of the prohibition specifically listed under this statute, but that it generally used unfair or unconscionable means.  15 U.S.C. § 1692f (listing conduct that violates the statute, but noting the list does not limit the "general application").  Defendant argues only that if summary judgment is granted on the c. 93A claim, it must be granted on the § 1692f claim as well, because the two are based on the same conduct.  In this case, "[a]lthough violations of chapter 93A are not *per se* violations of the FDCPA…the reasons for sustaining the chapter 93A claim also provide a basis for sustaining the § 1692f claim."  Stagikas v. Saxon Mortg. Services, Inc., 795 F.Supp.2d 129, 139 (D. Mass. 2011).

      Plaintiff presents sufficient evidence for damages on the FDCPA claims as well. Plaintiff is entitled to statutory damages up to $1,000, actual damages, and attorney's fees if he can show any violation.  15 U.S.C. §1692k.  Actual damages for FDCPA violations can include damages for emotional distress.  *In re Hart*, 246 B.R. 709, 730 (Bankr. D. Mass. 2000).  To prove emotional distress damages stemming from a FDCPA violation, state law proof requirements "are inapplicable," and Plaintiffs assertions alone may be enough."  *Id*. at 730, 732-33 (awarding Plaintiff emotional distress damages based on Plaintiff's generalized statements about his anger, frustration, and emotional distress).  Plaintiff's affidavit states Plaintiff suffered embarrassment and anger, along with stress that had physical manifestations such as weight loss, racing heart, restlessness, muscle tensions, and shingles.

      The record supports a finding that Defendant violated the FDCPA, both 15 U.S.C. § 1692c and 15 U.S.C. § 1692f, and that Plaintiff suffered actual damages as a result. Therefore, Defendants motion for summary judgment on Count III is denied.

## **Conclusion**

Defendant Saxon Mortgage Services, Inc.'s Motion for Summary Judgment (Docket No. 41) is ***denied*** as provided in this Memorandum of Decision.

**SO ORDERED**

*/s/ Timothy S. Hillman*
TIMOTHY S. HILLMAN
DISTRICT JUDGE